UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACK ECONOMIC COUNCIL OF MASSACHUSETTS, INC., GREATER BOSTON LATINO NETWORK, and AMPLIFY LATINX, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, and CHRISTINE STONEMAN, Chief, Federal Coordination and Compliance Section, Civil Rights Division, in her official capacity, <br><br> Defendants. | 23 Civ. No. 11378 <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. Black Economic Council of Massachusetts, Inc. ("BECMA"), Greater Boston Latino Network ("GBLN"), and Amplify Latinx (collectively, "Plaintiffs") bring this action for declaratory and injunctive relief to challenge the failure of Defendants U.S. Department of Justice ("DOJ") and Chief of the Federal Coordination and Compliance Section Christine Stoneman (collectively, "Defendants") to enforce Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI") and DOJ's Title VI implementing regulations, 28 C.F.R. §§ 42.101 *et seq.* Defendants unlawfully and erroneously dismissed Plaintiffs' administrative complaint (the "Administrative Complaint") against the City of Boston, a recipient of significant DOJ funds, on jurisdictional grounds. By this lawsuit, Plaintiffs seek an order compelling Defendants to accept jurisdiction over the Administrative Complaint and investigate the matter as required by law.

1

2. Plaintiffs filed the Administrative Complaint at issue here with DOJ on February 17, 2021, alleging race discrimination in violation of Title VI. As the Respondent, Plaintiffs named the City of Boston ("City"), a recipient of federal funding from DOJ. A true copy of the Administrative Complaint is attached as **Exhibit 1.**

3. Plaintiffs sought redress for the City's creation and maintenance of a discriminatory public contracting system, which disproportionately and unjustifiably excludes minority-owned businesses from equal opportunity. The Administrative Complaint alleged that the City's failure constitutes race discrimination and noncompliance with Title VI.

4. On March 12, 2021, the DOJ confirmed receipt of the Administrative Complaint and requested a call to discuss the allegations in the Complaint. This call took place on March 18, 2021.

5. On March 25, 2021, counsel for BECMA, GBLN, and Amplify Latinx sent a follow-up letter to DOJ, describing how "[t]he City itself, acting through the Mayor, is responsible for the stark disparity in the City's contracting…." *See* **Exhibit 2.** The letter also outlined how "the City – and not just its departments – accepts federal financial assistance, obligating it to comply with Title VI." *Id.*

6. DOJ has jurisdiction over the Administrative Complaint because the City of Boston has received and is presently receiving funding from DOJ, such that its operations are considered "programs or activities" within the meaning of Title VI and related jurisprudence. *See* Admin. Compl. at 10. The City has also signed contractual documents with DOJ, binding itself to the obligations of Title VI as a condition of accepting federal funds.

7. Nonetheless, on December 8, 2022, DOJ informed Plaintiffs that the agency "has determined that [they] do not have jurisdiction over the Title VI allegations in [the] complaint, and therefore [they] will not be opening an investigation." A true copy of that letter is attached as **Exhibit 3** ("Jurisdictional Decision").

8. On February 13, 2023, Plaintiffs sent a letter to DOJ providing additional documentation of the City's receipt of federal funds and asking for a reconsideration of the DOJ's jurisdiction determination. A true copy of that letter is attached as **Exhibit 4.**

9. On March 2, 2023, DOJ responded, refusing to reconsider its original determination. A true copy of that letter is attached as **Exhibit 5**.

10. Defendants' Jurisdictional Decision is incorrect as a matter of law. DOJ is bound by its statutory mandate to enforce civil compliance by entities that receive federal funding from the agency, such as the City of Boston.

11. Plaintiffs cannot appeal DOJ's Jurisdictional Decisions under the agency's Title VI implementing regulations and have no other recourse at law.

12. Accordingly, Plaintiffs now ask the Court to declare that the Jurisdictional Decision violates the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq*. ("APA") and Title VI and is therefore void and without legal force or effect. Plaintiffs also ask the Court to issue an injunction compelling the DOJ to assert jurisdiction over Plaintiffs' Administrative Complaint and remand the Complaint to the agency for completion of its complaint investigation procedures under 28 C.F.R. §§ 42.101 *et seq*. consistent with the timelines those regulations establish.

## PARTIES

13. Plaintiff BECMA is a non-profit organization whose mission is to advance the economic well-being of Black businesses and organizations that serve the Black community and Black residents of Massachusetts. BECMA does so by convening important conversations that seek solutions to persistent racial and economic issues; advocating on behalf of its business members at the state and local levels for policies that help grow and sustain the Black economy; and connecting its members to business opportunities in the public and private sectors. Due to the City's discriminatory contracting practices, BECMA attracts fewer resources and contributions from Black-owned businesses who are not successful under the City's procurement practices. Furthermore, BECMA has to expend significant time and resources advocating with City officials to put forth policies that would increase City investment in minority-owned businesses. BECMA maintains its principal place of business in Boston, Massachusetts.

14. Plaintiff GBLN is a coalition of community-based organizations whose goal is to increase the visibility, impact, and voice of the Latinx community. As part of this project, GBLN seeks to ensure the fair and proportionate representation of Latinx community members in the City's government and contracts. GBLN's members serve minority business owners who are willing and able to contract with the City—but have been shut out instead. As a result of the City's discriminatory contracting practices, GBLN and its members have been forced to pour extensive resources into advocating for small businesses and working to lift Latinx families out of poverty. GBLN maintains its principal place of business in Boston, Massachusetts.

15. Plaintiff Amplify Latinx is a Boston based non-profit whose mission is to build Latino economic and political power in Massachusetts. Its PowerUp Latino Business Program is focused on increasing growth and economic opportunity for Latinx-owned businesses in the state. Amplify Latinx provides technical assistance, education, and information on contracting opportunities to its network of Latinx-owned businesses. Amplify Latinx works with small businesses who are able and willing to contract with the City of Boston but have been unable to because of the City's discriminatory practices. Amplify Latinx has been required to expand resources into supporting these businesses in an attempt to make up for these lost opportunities. Amplify Latinx maintains its principal place of business in Boston, Massachusetts.

16. Defendant DOJ is a department of the Executive Branch of the United States Government. DOJ has the authority to provide grants and other financial assistance to local and state programs and activities, 28 C.F.R. § Pt. 42, Subpt. C, App. A, and must investigate compliance with Title VI to ensure that no person is excluded from participation in, denied the benefits of, or is subjected to discrimination under any program or activity receiving DOJ assistance on the basis of race, color, national origin, or on the basis of sex. 28 C.F.R. §§ 42.101 *et seq*.

17. Defendant Christine Stoneman is the Chief of the Federal Coordination and Compliance Section of the Civil Rights Division of DOJ, and as such, is responsible for the implementation and enforcement of the civil rights statues, including Title VI, across federal agencies. Defendant Stoneman is sued in her official capacity.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, 7 U.S.C. § 7, and 28 U.S.C. § 2201.

19. Venue is proper in this Court under 28 U.S.C. § 1391 because all Plaintiffs have their principal places of business in Massachusetts.

## LEGAL BACKGROUND

**Title VI and the Civil Rights Restoration Act**

20. Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

21. As the Supreme Court has observed, the "voluminous legislative history" of Title VI reveals a "congressional intent to halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 284 (1978).

22. Remarking on the centrality of Title VI to the federal government's effort to stamp out discrimination, President John F. Kennedy told Congress that "indirect discrimination, through the use of Federal funds, is just as invidious [as direct discrimination]; and it should not be necessary to resort to the courts to prevent each individual violation."[1]

23. The "rules, regulations, or orders" promulgated under section 602 of Title VI empower "[e]ach Federal department and agency" to "effectuate the provisions" of section 601 in their extension of federal financial assistance to "any program or activity" and can proscribe conduct that has a disparate impact on protected groups and individuals.

---

[1] President John F. Kennedy, *Special Message to the Congress on Civil Rights and Job Opportunities*, The American Presidency Project (June 19, 1963), available at: http://www.presidency.ucsb.edu/ws/?pid=9283.

*Alexander v. Sandoval*, 532 U.S. 275, 281 (2001); *see, e.g.*, 28 C.F.R. §§ 42.101 *et seq.*; id. § 42.104(b)(2) (a recipient "may not, directly or through contractual or other arrangements, utilize criteria or methods of administration which have the *effect* of subjecting individuals to discrimination because of their race, color, or national origin, or have the *effect* of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin.") (emphasis supplied).

24. As the Second Circuit has observed, "clever men may easily conceal their motivations"; a facially neutral rule may "bear no relation to discrimination upon passage but develop into powerful discriminatory mechanisms when applied." *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 945 (2d. Cir. 1988) (citation omitted), *superseded by regulation on other grounds*, 78 Fed. Reg. 11, 460 (Feb. 13, 2013).

25. Section 602 and the accompanying agency regulations have served an essential civil rights purpose, since the Supreme Court held in *Sandoval*, 532 U.S. at 293, that there is no implied private right of action under the disparate impact provisions of Title VI. The administrative complaint mechanism allows victims of discrimination to bring their claims to federal agencies, who are empowered to carry out comprehensive investigations of their own funding recipients and to seek compliance without resorting to adversarial judicial proceedings.

26. Congress has taken affirmative action to codify the broad scope of Title VI's coverage. In 1984, the Supreme Court decided *Grove City College v. Bell*, 465 U.S. 555 (1984), holding that the receipt of basic educational opportunity grants by a college's students did not trigger "institution-wide coverage" under Title IX of the Education Amendments of

1972. *Id.* at 573. Instead, the Court determined that the grants represented federal financial assistance only to the college's financial aid program, such that that program alone could be properly regulated under Title IX. *Id*. at 574.

27. Congress enacted the Civil Rights Restoration Act in 1988 in response to this "unacceptable decision." *Franklin v. Gwinnett Cty. Public Schools*, 503 U.S. 60, 73 (1992). Congress stated its intent plainly in the title: "An Act to restore the broad scope of coverage and to clarify the application of [Title IX], section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Title VI of the Civil Rights Act of 1964." Civil Rights Restoration Act of 1987, Pub. L. 100-259, 102 Stat. 28 ("CRRA").

28. Finding that the Supreme Court had "unduly narrowed or cast doubt upon the broad application" of Title VI and that legislative action is "necessary to restore the . . . broad, institution-wide application" of that law, Congress specifically amended Title VI to reflect the following:

> Sec. 908. 20 USC 1687. For the purposes of this title, the term 'program or activity' and 'program' mean all of the operations of--
>
> (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
>
> (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
> ….
>
> any part of which is extended Federal financial assistance . . .

*Id.*

29. Congress emphasized that the definitions were intended to "make clear that discrimination is prohibited through *entire* agencies or institutions if *any part* received

8

Federal financial assistance." S. Rep. No. 64, 100th Cong., 2d Sess. 4 (emphases added); *see also Comfort ex rel. Neumyer v. Lynn School Committee*, 131 F.Supp.2d 253, 255 n.4 (D. Mass. 2001) (observing that while prior to 1988, courts only applied Title VI to the "specific programs that received federal funds," the CRRA "incorporated a broader concept of 'program or activity' to include all of the operations of a federally funded institution that conducted the program or activity.").

**DOJ's Title VI Regulations**

30. DOJ enforces Title VI through regulations codified at 28 C.F.R. §§ 42.101 *et seq*., Nondiscrimination in Federally Assisted Programs – Implementation of Title VI of the Civil Rights Act of 1964.

31. The regulation's application is broad, applying to "any program for which Federal financial assistance is authorized under a law administered by [DOJ]." 28 C.F.R. § 42.103.

32. Critically, and consistent with the CRRA, DOJ defines "program or activity" and "program" to include "all of the operations" of a

> department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

28 C.F.R. § 42.102 (d)(1) (i-ii).

33. The regulation specifically reaches conduct that has a disparate impact, barring the use criteria or methods of administering the program or activity "which have the effect of subjecting individuals to discrimination" because of their race, color, or national origin or "have the effect of defeating or substantially impairing accomplishment of the objectives

9

of the program or activity" with respect to individuals of a particular race, color, or national origin. *Id.* § 42.104(b)(vii)(2).

34. The Federal Coordination and Compliance Section (FCS) within the DOJ's Civil Rights Division is responsible for conducting investigations upon receipt of a Title VI complaint to ensure that federal funding recipients are complying with their civil rights obligations.

## FACTUAL ALLEGATIONS

35. On February 17, 2021, Plaintiffs filed the Administrative Complaint with the FCS alleging race discrimination in violation of Title VI and its implementing regulations by Respondent, the City of Boston. Plaintiffs simultaneously filed the Complaint with the U.S. Department of Transportation.

36. In brief, the Administrative Complaint alleges that the City of Boston's public contracting system disproportionately excludes Black- and Latinx-owned businesses from equal opportunity.

37. These failures include, but are not limited to:

    a. Maintaining public contracting practices that disproportionately and unjustifiably harm Black and Latinx business owners;

    b. Funneling more than 98% of the City's public contracting to majority-owned firms;

    c. Failing to contract with qualified Black- and Latinx-owned businesses, despite these businesses' readiness and availability to do the type of work required by the City; and

    d. Failing to adopt and implement remedial steps to eliminate the longstanding exclusion of Black- and Latinx-owned businesses, as numerous other state and local governments have done.

38. The Administrative Complaint lays out, in detail, how the City of Boston's conduct allows and continues to perpetuate the deeply entrenched racism that plagues Boston's contracting system.

39. The Administrative Complaint also alleges that the City receives significant federal funding from DOJ. In Fiscal Year 2019, 2020, and 2021, the City of Boston received $248,500, $239,254, and $272,013, respectively, in federal funding from DOJ.

40. On March 12, 2021, the DOJ wrote to counsel for BECMA, GBLN, and Amplify Latinx to confirm DOJ's receipt of the Administrative Complaint and to schedule a call to discuss the allegations in the Complaint, which occurred on March 18, 2021.

41. One of the issues discussed during the March 18, 2021 call was the grounds for holding the City of Boston as a whole liable for the conduct alleged in the Complaint. On March 25, 2021, counsel for BECMA, GBLN, and Amplify Latinx sent a follow-up letter to DOJ outlining how "the City – and not just its departments – accepts federal financial assistance, obligating it to comply with Title VI." *See* **Exhibit 2**. The letter attached additional documentation showing that the City of Boston is the recipient of funds from DOJ.

42. Over a year-and-a-half later, on December 8, 2022, DOJ sent an email to counsel for BECMA, GBLN, and Amplify Latinx with the Jurisdictional Decision, stating that "the Department has determined that [it does] not have jurisdiction over the Title VI allegations in your complaint." *See* **Exhibit 3**. The Jurisdictional Decision stated that

"[a]n entire state or local government is generally not considered a 'program or activity' where the funding goes to an agency or department within the entity and not to the state or local government specifically."

43. On February 13, 2023, counsel for BECMA, GBLN, and Amplify Latinx responded to DOJ asking the Department to reconsider their Jurisdictional Decision. *See* **Exhibit 4.** In that letter, counsel pointed out again that the Complaint alleges direct receipt of federal funds by the City of Boston *specifically*. The letter attached additional documents showing that the City itself is the recipient of federal funds, as well as approval documents signed by Boston's mayor, accepting funds on behalf of the City. See *id*. (Exs. A, B).

44. On March 2, 2023, DOJ sent counsel for BECMA, GBLN, and Amplify Latinx a letter denying reconsideration. The letter stated, "the Department will not be opening an investigation in response to your complaint." *See* **Exhibit 5.**

45. The Jurisdictional Decision is incorrect as a matter of law and reflects a misguided and antiquated application of the Title VI jurisdictional standard. As confirmed by Congress in its passage of the CRRA and the overwhelming weight of subsequent case law, an entire state or local government can be held liable for Title VI violations in a variety of contexts, as is the case here. As a result, the Jurisdictional Decision dismissing the Administrative Complaint against the City of Boston was legally erroneous and must be set aside under the APA. 5 U.S.C. § 706(2)(A).

46. The Jurisdictional Decision did not provide BECMA, GBLN, and Amplify Latinx with a thorough or, reasoned explanation as their conclusion.

47. The Jurisdictional Decision did not even address or analyze the argument—described in detail in the Administrative Complaint— that as a direct recipient of federal grants, the City of Boston's is wholly responsible for perpetuating the entrenched disparities and inequities in the city's contracting system in violation of Title VI.

48. Indeed, in the decision denying reconsideration, DOJ simply stated that "the jurisdictional analysis under Title VI concerning state and local governments is complex and requires a critical assessment tailored to the specific set of circumstances." Yet it failed to provide any basis in law or fact that DOJ lacks authority to redress the allegations of the Administrative Complaint.

49. The decision that DOJ does not have jurisdiction over the City of Boston and lacks authority to redress the allegations of the Administrative Complaint are not committed to agency discretion. DOJ has no discretion to disregard the explicit, controlling language of Title VI or its own regulations.

50. DOJ's Jurisdictional Decision and subsequent denial of reconsideration, which "close[d]" the Administrative Complaint, are a final agency action, within the meaning of the APA.

51. Plaintiffs have no other adequate remedy at law, as DOJ's implementing regulations provide no opportunity for complainants to appeal an agency's jurisdictional determinations and no such mechanism was described or noticed in the Jurisdictional Decision. *See generally* 28 C.F.R. §§ 42.107, 42.108.

52. There is no other regulatory or legal vehicle for Plaintiffs to challenge a jurisdictional determination by DOJ with respect to Title VI coverage.

53. Plaintiffs also cannot bring a disparate impact discrimination lawsuit directly against the City of Boston because the Supreme Court has held that there is no private right of action

to enforce the disparate impact protections of Title VI. *See Alexander v. Sandoval*, 532 U.S. 275 (2001).

54. Plaintiffs and their members continue to be concerned about the City of Boston's ongoing exclusion of Black- and Latinx-owned businesses from equal opportunity and participation in the city's public contracting system on the basis of race.

55. DOJ's Jurisdictional Decision is incorrect as a matter of law and must be set aside under the APA, with the Administrative Complaint remanded to DOJ for consideration and investigation on the merits.

## CLAIMS

## COUNT I

### Declaratory Judgment, 28 U.S.C. § 2201

56. Plaintiffs adopt by reference the allegations of the preceding paragraphs.

57. For the reasons stated above, Defendants have violated the APA, Title VI and its implementing regulations, and other laws.

58. Plaintiffs seek a declaration to that effect.

59. Defendants' illegal actions have injured and will continue to injure Plaintiffs in numerous ways.

## COUNT II

### Violation of Administrative Procedure Act, Not in Accordance with the Law

60. Plaintiffs adopt by reference the allegations of the preceding paragraphs.

61. The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, ensures that federal agencies are accountable to the public by providing a "right of review" to any "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency

action." 5 U.S.C. § 702. Judicial review extends to "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

62. The APA directs the federal courts to "hold unlawful and set aside agency actions, findings, and conclusions" that are "not in accordance with law." 5 U.S.C. § 706(2)(A).

63. In issuing the Jurisdictional Decision, Defendants have violated the clear statutory command of Title VI, as amended by the CRRA, to reject a program-specific approach to Title VI and exercise jurisdiction over all a recipient's "programs or activities."

64. The Jurisdictional Decision has caused and will continue to cause harm to Plaintiffs.

65. This Court should vacate and remand the Jurisdictional Decision to the agency for consideration on the merits under 5 U.S.C. § 706(2)(A) because the Decision is contrary to Title VI and DOJ's implementing regulations and are therefore not in accordance with law.

## COUNT III

Violation of Administrative Procedure Act, Arbitrary and Capricious

66. Plaintiffs adopt by reference the allegations of the preceding paragraphs.

67. The APA directs federal courts to "hold unlawful and set aside agency actions, findings, and conclusions" that are "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A).

68. DOJ's actions constitute arbitrary and capricious acts because DOJ failed to provide a reasoned analysis as to how it reached its determination that the agency lacked jurisdiction over the City of Boston based on the erroneous conclusion that "the funding [went] to an agency or department within the entity not with the state or local government specifically."

69. DOJ failed to consider or analyze whether the City of Boston's direct receipt of federal funding and contract documents specifically binding the City to the obligations of Title VI give the Department jurisdiction over the Complaint.

70. DOJ also failed to consider or analyze whether the City of Boston's direct and ongoing role in perpetuating the entrenched disparities and inequities in the public contracting systems gives the Department jurisdiction over the Complaint.

71. DOJ's arbitrary and capricious conduct, as contained in the Jurisdictional Decision, has caused and will continue to cause harm to Plaintiffs.

72. The Court should vacate and remand the Jurisdictional Decision under 5 U.S.C. § 706(2)(A) because it is arbitrary and capricious.

## COUNT IV

### Violation of Administrative Procedure Act, Without Lawful Authority

73. Plaintiffs adopt by reference the allegations of the preceding paragraphs.

74. The APA directs federal courts to "hold unlawful and set aside agency actions, findings, and conclusions" that are "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(C).

75. The Jurisdictional Decision purports to restrict the jurisdiction of federal agencies to those programs or activities that directly or indirectly receive funding, even when the city is a direct recipient of federal funds, contractually obligates itself to abide by Title VI, and is directly responsible for the discrimination.

76. DOJ has no statutory power to disregard, overrule, or otherwise alter the reach of Title VI.

77. DOJ's conduct in excess of its statutory authority has caused and will continue to cause harm to Plaintiffs.

78. The Court should vacate and remand the Jurisdictional Decision under 5 U.S.C. § 706(2)(C) because it was issued in excess of the agency's statutory jurisdiction or authority.

PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court grant the following relief:

1. Declare that the Jurisdictional Decision violates the Administrative Procedure Act, 5 U.S.C. s. 701, *et seq.*, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, and DOJ's implementing regulations, 28 C.F.R. §§ 42.101 *et seq.*, and is therefore void and without legal force or effect.

2. Issue an injunction ordering DOJ to accept jurisdiction over Plaintiffs' Administrative Complaint and remand the Administrative Complaint to the agency to undertake the complaint investigation procedures set forth in 28 C.F.R. §§ 42.107 in compliance with the timelines set forth in those regulations.

3. Award Plaintiffs reasonable attorneys' fees and costs under the Equal Access to Justice Act.

4. Provide all other necessary and appropriate relief that justice may require.

Dated: June 21, 2023

By their attorneys,

*/s/ Oren Sellstrom*
Oren Sellstrom (BBO # 569045)
Mirian Albert (BBO # 710093)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, Massachusetts 02110
Tel: (617) 988-0609
osellstrom@lawyersforcivilrights.org
malbert@lawyersforcivilrights.org
*Attorneys for BECMA, GBLN, and Amplify Latinx*