UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BLACK ECONOMIC COUNCIL OF MASSACHUSETTS, INC., GREATER BOSTON LATINO NETWORK, and AMPLIFY LATINX,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and CHRISTINE STONEMAN, Chief, Federal Coordination and Compliance Section, Civil Rights Division, in her official capacity,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:23-cv-11378-IT<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

April 26, 2024

TALWANI, D.J.

    Plaintiffs Black Economic Council of Massachusetts, a "non-profit organization whose mission is to advance the economic well-being of Black businesses and organizations that serve the Black community and Black residents of Massachusetts," Compl. ¶ 13 [Doc. No. 1], Greater Boston Latino Network, a "coalition of community-based organizations whose goal is to increase the visibility, impact, and voice of the Latinx community," id. ¶ 14, and Amplify Latinx, a Boston-based non-profit organization "whose mission is to build Latino economic and political power in Massachusetts," id. ¶ 15, bring this action against the United States Department of Justice ("DOJ") and Christine Stoneman, in her official capacity as Chief of the DOJ's Federal Coordination and Compliance Section ("FCS"). The three Plaintiff organizations are challenging the DOJ's decision not to investigate their Administrative Complaint alleging racial discrimination in the City of Boston's public contracting practices.

Now pending is Defendants' Motion to Dismiss [Doc. No. 6] Plaintiffs' Complaint [Doc. No. 1]. For the reasons set forth below, the motion is GRANTED.

**I.      Background**

A.  *Title VI and the DOJ's Implementing Regulations*

Title VI of the Civil Rights Act of 1964 ("Title VI") provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Recipients of federal financial assistance are prohibited from discriminating on the basis of race, color, or national origin with respect to the operation of the recipient's covered programs or activities. See U.S. Dep't of Just., DOJ Title VI Legal Manual § V, C-E. Title VI authorizes and directs federal departments and agencies that extend financial assistance to issue rules, regulations, or orders that effectuate the prohibition on discrimination on the basis of race, color, or national origin. 42 U.S.C. § 2000d-1. The DOJ has also promulgated its own regulations implementing Title VI. See Subpart C, Nondiscrimination in Federally Assisted Programs—Implementation of Title VI, 28 C.F.R. §§ 42.101-42.112.

Under these regulations, "[a]ny person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this subpart may by himself or by a representative file with the responsible Department official or his designee a written complaint." 28 C.F.R. § 42.107(b). The regulations provide further that "[t]he responsible Department official or his designee will make a prompt investigation whenever a . . . complaint . . . indicates a possible failure to comply with this subpart." 28 C.F.R. § 42.107(c).

While each federal agency extending federal financial assistance has primary responsibility for implementing Title VI with respect to its recipients, responsibility for overall coordination in identifying legal and operational standards, and ensuring consistent application and enforcement, rests with the DOJ's Civil Rights Division. Within the Civil Rights Division, the section that provides Title VI technical assistance, including legal and policy review, and oversight to agency civil rights offices, is FCS. See DOJ Title VI Legal Manual § III, at 4.

B. *Plaintiffs' Administrative Complaint and Defendants' Response*

On February 17, 2021, Plaintiffs filed an Administrative Complaint with FCS, alleging racial discrimination in the City of Boston's public contracting practices. Compl. ¶¶ 2-3 [Doc. No. 1]. The Administrative Complaint asserted that the City's procurement practices disproportionately disadvantage Black- and Latinx-owned businesses, with these businesses receiving less than 2% of the approximately $600 million that the City spends on public contracts each year. Compl., Ex. 1 at 4 (Admin. Compl.) [Doc. No. 1-1]; Compl. ¶¶ 36-38 [Doc. No. 1]. Plaintiffs also alleged that the City of Boston "is a recipient of considerable grant funding from the DOJ," and point specifically to federal grants the Boston Police Department received in conjunction with its DNA Backlog Reduction Program. Compl., Ex. 1 at 13 [Doc. No. 1-1].

In March 2021, the DOJ acknowledged receipt of the Administrative Complaint and requested a call to discuss Plaintiffs' allegations. Compl. ¶¶ 4, 40 [Doc. No. 1]. Following a phone call with the DOJ, Plaintiffs sent FCS a follow-up letter describing in further detail how "[t]he City itself, acting through the Mayor, is responsible for the stark disparity in the City's contracting…" and "the City – and not just its departments – accepts federal financial assistance, obligating it to comply with Title VI." Id. ¶¶ 5, 41.

In December 2022, the FCS sent Plaintiffs a letter stating, "[a]fter a close review … the Department has determined that we do not have jurisdiction over the Title VI allegations in your complaint, and therefore we will not be opening an investigation." Compl., Ex. 3 at 2 (DOJ Decision Letter) [Doc. No. 1-3].

On February 13, 2023, Plaintiffs requested that DOJ reconsider its decision not to investigate. Compl. ¶¶ 8, 43; see Compl., Ex. 4 (Plaintiffs' Request for Reconsideration) [Doc. No. 1-4]. On March 2, 2023, the FCS denied the reconsideration request, reiterating its determination that the City's decentralized contracting and procurement processes meant it is not a "program or activity" under the DOJ's purview for purposes of Title VI. Compl., Ex. 5 at 2 (DOJ Reconsideration Letter) [Doc. No. 1-5]. While acknowledging that the City itself receives grant funds through the DNA Backlog Reduction Program, the letter noted that "the complaint here makes no allegations that the alleged discriminatory practices have been perpetuated by the department that received the [DOJ] funds…." Id. at 3. Citing various City of Boston press releases, the letter also noted that "the City of Boston has announced several measures to address minority contracting issues," some of which "appear to be included in the type of requested remedies you identified in your complaint." Id. at 3-4. The letter concluded that for a "variety of reasons," the DOJ would not pursue a Title VI investigation against the City. Id. at 4.

C.  *The Present Lawsuit*

Plaintiffs filed this lawsuit on June 21, 2023, under the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq. ("APA"). Compl. [Doc. No. 1]. Plaintiffs seek declaratory and injunctive relief, asking the court to overturn the DOJ's decision not to investigate and to remand the Administrative Complaint to the DOJ for investigation. Id. ¶¶ 56-65. Plaintiffs allege that the

4

DOJ's decision was incorrect as a matter of law, arbitrary and capricious, and without lawful authority and must be set aside. Id. ¶¶ 55-78.

Defendants' Motion to Dismiss [Doc. No. 6] seeks dismissal of Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. Defendants' Mem. ISO Mot. to Dismiss ("Defs.' Mem.") 7-8 [Doc. No. 7].

## II.     Standard of Review

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. When a motion to dismiss for lack of subject matter jurisdiction is decided without the taking of any evidence, the court treats all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. See Fothergill v. United States, 566 F.3d 248, 251 & n.1 (1st Cir. 2009).

A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case").

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III.  Standing

To establish standing, a plaintiff must satisfy three elements. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent. Id. Second, the injury must be fairly traceable to the challenged action of the defendant. Id. at 560-61. Third, it must be likely that the injury will be redressed by a favorable decision. Id. at 561.

Courts recognize that parties can have standing based on a "procedural injury" where they have been deprived a procedural right. See, e.g., id. at 571-72. In cases alleging procedural harms, the immediacy and redressability requirements of standing are relaxed. See Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 27 (1st Cir. 2007); see also Lujan, 504 U.S. at 572 n.7 ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all of the normal standards for redressability and immediacy.").

Plaintiffs assert a procedural injury theory of their standing. In Plaintiffs' view, they "have an explicitly defined right to have their claims of discrimination investigated; they suffered a tangible harm when Defendants thwarted this right; and the remedy they seek (remand for an investigation to be opened) is narrow and targeted." Plaintiffs' Mem. in Opp. to

Defendants' Mot. to Dismiss ("Pls.' Opp.") 9-10 [Doc. No. 10]. For two reasons, the court finds Plaintiffs' argument that they have standing based on procedural injury unavailing.

Though procedural injury standing loosens the requirements of redressability and immediacy, parties still must demonstrate they have suffered an injury in fact that is concrete and particularized. "Regardless of the redressability showing we have tolerated in the procedural-rights context, we have never held a litigant who asserts such a right is excused from demonstrating that it has a 'concrete interest that is affected by the deprivation' of the claimed right." Dep't of Educ. v. Brown, 600 U.S. 551, 562 (2023) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 496-97 (2009)).

Further, parties alleging violations of "procedural rights" must show that the defendant caused *both* the procedural violation and the particularized injury. See Ctr. for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1159 (D. C. Cir. 2005); see also Lujan, 504 U.S. at 573 n.8 (rejecting dissent's argument that "the Government's violation of a certain . . . class of procedural duty satisfies the concrete-injury requirement by itself, without any showing that the procedural violation endangers a concrete interest of the plaintiff (apart from his interest in having the procedure observed.")); see also Equal Means Equal v. Ferriero, 478 F. Supp. 3d 105, 125 (D. Mass. 2020) (finding plaintiffs cannot show a concrete and particularized stake in the outcome of a procedural violation by arguing that a myriad of general consequences will flow from the violation of that procedural right). In other words, the procedural violation cannot itself also constitute an injury-in-fact.

The First Circuit has characterized the procedural standing analysis as having relaxed immediacy concerns. Thus, to establish an injury in fact, plaintiffs need only show that the statute or regulation providing the procedure allegedly violated was designed to protect some

concrete threatened interest personal to them. Nulankeyutmonen, 503 F.3d at 27 (internal quotation omitted). In Nulankeyutmonen, for example, the plaintiffs, a group of tribe members and individual tribe members, alleged under various environmental statutes that the Bureau of Indian Affairs failed to follow the required procedures of those statutes before approving the lease of land near a lake. The First Circuit found that plaintiffs' concrete and particularized interest was clear because they lived near the land and used the land and surrounding waters for a variety of ceremonial and community purposes. Id.

On the other hand, in Lujan, the Supreme Court rejected a procedural injury theory of standing under the Environmental Protection Act ("EPA") from plaintiffs who asserted an injury based on a general interest in observing and protecting endangered species. 504 U.S. at 562-63, 572-73. The Court reasoned that the mere fact of a citizen-suit provision in the EPA authorizing virtually anyone to bring an administrative complaint did not, in itself, establish an injury-in-fact for standing purposes. Id. at 572-73. The Court rejected the view that the injury requirement of standing "had been satisfied by congressional conferral upon *all* persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." Id. at 573.

This case is much more like Lujan than Nulankeyutmonen. Here, Plaintiffs brought their administrative complaint to the DOJ pursuant to DOJ regulations authorizing "[a]ny person who believes himself or any specific class of individuals to be subjected to discrimination" to file an administrative complaint, much like the EPA's citizen-suit provision. 28 C.F.R. § 42.107(b). But this general authorization to bring an administrative complaint, like a citizen-suit provision, does not automatically confer Article III standing to bring a suit. Plaintiffs do not allege that they have sought contracts with the city of Boston or experienced discrimination in not being awarded

8

those contracts. To the contrary, Plaintiffs assert only an interest in "having Defendants open an investigation into their claims of discrimination." Pls.' Opp. 10 [Doc. No. 10].

To the extent that Plaintiffs attempt to articulate a concrete injury based on the DOJ's decision not to open an investigation—namely the impact of Boston's alleged discrimination on Plaintiffs' lobbying and advocacy efforts and the resources Plaintiffs have been required to expend to combat the alleged discrimination, see id.—those injuries do not clear the injury bar required for standing. Even if the court accepts Plaintiffs' argument that (1) the resources they expended due to Boston's allegedly discriminatory policies are sufficient to show a concrete injury-in-fact distinct from its procedural harm, and (2) that DOJ's failure to open an investigation was a denial of Plaintiffs' protectible interest in having a DOJ complaint investigated under DOJ's regulations, Plaintiffs have not established that DOJ is responsible for both the procedural violation (the refusal to investigate) and the invasion of a distinct concrete, particularized interest (the alleged violation of Title VI in Boston's contract procurement practices). See Ctr. for Law and Educ., 396 F.3d at 1159.

## IV.   Failure to State a Claim

Even if Plaintiffs had identified a cognizable injury sufficient to establish Article III standing, the court would have to dismiss the action for failure to state a claim where the DOJ's decision not to investigate is committed to agency discretion and falls squarely within the ambit of Heckler v. Chaney's holding that "agency refusals to institute investigative or enforcement proceedings" are presumptively unreviewable. 470 U.S. 821, 838 (1985).

DOJ's implementing Title VI regulation provides that DOJ "will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply" with Title VI. 28 C.F.R. § 42.107(c). Plaintiffs interpret

this language to mean that the DOJ must open an investigation into any complaint that asserts a Title VI violation. Pls.' Opp. 14 [Doc. No. 10]. The court disagrees.

In the administrative law context, courts regularly decline to infer mandatory enforcement even in the face of "mandatory" language, such as "will," "shall," or "must," see, e.g., U.S. v. Texas, 599 U.S. 670, 682 (2023), particularly where such an inference would trample agency and Executive Branch discretion to exercise enforcement authority, id. Plaintiffs' reading of § 42.107(c) as mandatory would strip the DOJ of its discretion to make the initial determinations about whether the complaint "indicates a possible failure to comply" with Title VI and its ability to make decisions about how to allocate its resources. Decades of administrative law precedent as well as first order separation of powers principles suggest this interpretation cannot be the correct one.

Instead, the court finds, as other courts have, that § 42.107(c)'s requirement that DOJ open an investigation is not "mandatory" relative to every complaint it receives, but contingent on the DOJ's determination that a possible violation of the underlying statute has occurred. See, e.g., Evans-Sampson v. DOJ, No. 21-1834, 2022 WL 883939, at *2 (3d Cir. Mar. 24, 2022) ("[T]he regulations on which [Plaintiff] relies . . . do not make any mention of a right of action against federal agencies for those dissatisfied with investigative or enforcement decisions. Rather, they provide a mechanism for administrative enforcement of the ADA, and they do not even require that each individual complaint be investigated as [Plaintiff] suggests."); see also Women's Student Union v. Dep't of Educ., No. 21-cv-01626-EMC, 2022 WL 484956, at *7 (N. D. Cal. Feb. 16, 2022) ("There is no guarantee of an investigation. . . [T]he Department is not *required* to conduct an investigation upon the receipt of *any* complaint, and Plaintiff is not *entitled* to an investigation by simply submitting a complaint. Instead, an investigation only

10

becomes mandatory upon the Department if the Department determines that there is a 'possible failure to comply' with the substance of the [] regulations.") (emphasis in original).

Plaintiffs received a decision on their administrative complaint when the DOJ sent its letter indicating it would not be opening an investigation. DOJ's determination that it lacked "jurisdiction" over Plaintiffs claims, was, in effect, its determination that the City of Boston is not a "program or activity" under Title VI. With that determination, the complaint did not indicate a possible failure to comply with that statue. This determination was well within the DOJ's discretion, and, moreover, was all that is required of the DOJ by its implementing regulations.

Had DOJ never responded to Plaintiffs' administrative complaint, Plaintiffs might have been able to bring an APA claim for agency action unreasonably delayed or withheld. 5 U.S.C. § 706(1). Plaintiffs have received a response, however, and with that in hand, Plaintiffs have failed to state a claim upon which relief can be granted.

### V.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 6] is GRANTED.

IT IS SO ORDERED

April 26, 2024                               /s/Indira Talwani
                                             United States District Judge